663 A.2d 664

COUNCIL OF NEW JERSEY STATE COLLEGE LOCALS, NJSFT, AFT/AFL–CIO, LOCAL 2364, PLAINTIFF, v. TRENTON STATE COLLEGE BOARD OF TRUSTEES, DEFENDANT.

Superior Court of New Jersey
Law Division Mercer County

Decided April 18, 1995.

---

*Barbara A. Canellis,* for plaintiff. (*Dwyer and Canellis,* attorneys).

*Barbara M. Kleva,* Deputy Attorney General, for defendant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

## OPINION

CARCHMAN, A.J.S.C.

A dispute arose between the Board of Trustees of Trenton State College (the Board or defendant) and two vice-presidents regarding the Board's mandatory housing policy for these vice-presi-

dents. The issues involved had received extensive public notoriety. To resolve the dispute, the Board adopted a resolution at a closed meeting authorizing certain payments to the vice-presidents. A general notice of the closed session was published with no mention made of consideration of a resolution of the housing dispute. No further mention of any action by the Board was made public until inquiry by a representative of plaintiff, the Council of New Jersey State College Locals, NJSFT, AFT/AFL–CIO, Local 2364 of the AFT (plaintiff). Plaintiff filed a complaint challenging the Board's action and alleging various violations of the New Jersey Open Public Meetings Act, *N.J.S.A.* 10:4–6 to –21 (the Sunshine Law or the Act). Some months later, the Board sent notice of an open meeting to all concerned parties and, at this meeting, the Board announced and ratified the terms of the settlement.

Defendant moved for summary judgment. This court finds that there is no genuine issue of material fact and the matter is appropriately resolved on this motion. This court holds that the general notice given by the Board of its closed session to approve the settlement did not comply with the act; however, the later ratification of the Board's action at a duly-noticed open meeting remedied the prior defective notice.

A.

Despite the fact that the mandatory housing issue was a matter of keen public interest at Trenton State College, the Board, in publishing its open meeting notice of its December 2, 1993, closed session, made no mention of the issue. At the open meeting, it adopted a resolution announcing that it would hold a closed session on February 17, 1994, to

consider personnel matters, labor relations, any pending litigation, and any other matters specifically exempted by the Open Public Meetings Act. It is anticipated that decisions made in closed session will be made public at future meetings.

The minutes from defendant's next two meetings fail to reveal any resolution of the dispute, any terms of a settlement or any

suggestion that the matter was even discussed. Nonetheless, suspecting that the college had, in fact, recently awarded extraordinary payments to two vice-presidents, on April 5, 1994, a representative of plaintiff wrote a letter of inquiry to the president of Trenton State College. The president's April 13, 1994 response confirmed that the two vice-presidents had been paid a total of $30,000 ($10,000 to one and $20,000 to the other) pursuant to a January 1994 settlement regarding a change in the college's policy on mandatory housing for vice-presidents. On June 7, 1994, plaintiff filed this action seeking to invalidate defendant's actions.

On December 6, 1994, the Executive Assistant to the President and Secretary to the Board sent notice of a December 15, 1994, public meeting of the Board to general circulation newspapers, a radio station, two campus newspapers, four unions (including the AFT) and eighteen other interested organizations and individuals. This notice invited members of the public to register and speak on agenda and non-agenda items. Attached to the notice was a preliminary agenda for the December 15, 1994 meeting. Section VIII (New Business), subsection A (Report of the Executive Committee), subparagraph 3 of that agenda identified for discussion a "Resolution concerning the settlement to address personal financial loss related to changes in the mandatory housing program."

At the December 15, 1994 meeting, in open session, the Board introduced and passed a resolution which approved a settlement apparently identical to the one to which plaintiff had previously objected.

Defendant urges on this motion that plaintiff's claims concerning the compensation to the two vice-presidents be dismissed as moot, since any prior improper action was cured by the Board at its December 15, 1994 meeting.

While plaintiff does not challenge the ratification *per se*, it asserts that the original notice is fatal to defendant's action. Plaintiff claims that the December 2, 1993 resolution announcing the Board's closed session violates *N.J.S.A.* 10:4–13 and invali-

dates the purported remedial action taken by the Board on December 15, 1994. To decide this issue, the court must consider whether the notice was so deficient so as to preclude the December 15, 1994 remedial action.

### B.

*N.J.S.A.* 10:4–13 requires all public bodies seeking to move into closed session to "first adopt a resolution, at a meeting to which the public shall be admitted: a. Stating the general nature of the subject to be discussed. . . ." Defendant acknowledges that:

> If the Board intends to hold a closed session on its regularly scheduled meeting day it has been the Board's practice to pass the following resolution: The Board of Trustees will hold closed session on [specific date] and at any other time as necessary to consider personnel matters, labor relations, any pending litigation, and any other matters specifically exempted by the Open Meetings Act.
>
> [Defendant's Brief at 2.]

Plaintiff claims that the notice is so general as to provide no notice at all.

The notice does not comply with *N.J.S.A.* 10:4–13. The Act mandates that the public be informed of "the general nature of the subject to be discussed." The Board, like many other public bodies, must tread a fine line—informing the public about its executive-session activities while not compromising the privacy interests of those whose business is being discussed. Nevertheless, the Board has struck a balance which does not afford the public any real knowledge of the Board's executive-session proceedings. The Board's notice is framed so broadly that it does no more than tell the public that there will be a meeting in executive session. The notice merely recites the litany of exceptions which would allow it to proceed in closed session. No attempt is made to indicate which one or ones of these exceptions are relevant to a particular closed-session proceeding. This complete failure to delineate which subject or subjects will be discussed in closed session does not comply with the statutory mandate that the public know the general nature of the agenda.

■ The statutory requirement is not an onerous one—only the *general* nature of subject need be disclosed; specificity is not required. For example, a resolution authorizing a closed session meeting to "Review the performance of individual personnel" comports with *N.J.S.A.* 10:4–13. *Cole v. Woodcliff Lake Bd. of Educ.*, 155 *N.J.Super.* 398, 407, 382 *A.*2d 966 (Law Div.1978); *see also Houman v. Mayor of Pompton Lakes*, 155 *N.J.Super.* 129, 149–50, 382 *A.*2d 413 (Law Div.1977) ("[T]he statement that personnel matters would be considered, without specific disclosure that the personnel question involved the retention of legal counsel, is arguably sufficient. However, the resolution made no mention of the fact that the closed meeting would also involve the discussion of whether, in the first instance, to pursue the appeals. Therefore, this resolution is not in conformity with the mandatory requirements of *N.J.S.A.* 10:4–13.").

[A]lthough there is no case law on the subject good practice would dictate that resolutions be as specific as possible, *e.g.*, the 'general nature of the subject to be discussed' should not be set forth as 'litigation' but, rather, as 'litigation-A vs. B.' Resolutions should contain as much information as is consistent with full public knowledge without doing any harm to the public interest.

[34 *New Jersey Practice, Local Government Law* § 141, at 174 (Michael A. Pane) (2d ed. 1993).]

■ The Board has made no effort to provide the public with as much knowledge as possible. It has merely recited the provisions of the statute, not made an attempt to comply with it. *N.J.S.A.* 10:4–13, which requires a public body to state the general nature of the subject or subjects to be discussed in closed session, would be devoid of all substantive meaning if mere reiteration of all potential reasons for moving into closed session were sufficient for compliance. The Legislature, in enacting *N.J.S.A.* 10:4–13, certainly did not intend that result. The Board's resolution, which simply parrots the statutory language and encompasses all possible justifications for proceeding in closed session, is improper.

■ The Board argues that the scheduling of the closed meeting precedes the public meeting and precludes the publication of notice more specific than the language presently utilized. Plaintiff

suggests a practical solution—rather than have the closed meeting precede the public meeting, reverse the order and issue appropriate notice. Not only is there no statutory impediment to this proposal, the statute appears to contemplate this procedure. The Board's argument is illusory; the problem is easily remedied.

■ This court holds that the statutory reference to general notice mandates more than a restatement of the statutory language and requires that the public be *informed* of the matters to be discussed, albeit in general terms rather than with the specificity required by the notice requirements for a public meeting.

### C.

In determining whether the inadequate notice is fatal or whether the remedial action of December 15, 1994, is sufficient to overcome the notice provided by the Board, this court must balance the specific notice requirements with the general purpose of the act.

■ *N.J.S.A.* 10:4–15, which lies at the heart of this dispute, provides, in pertinent part, "that a public body may take corrective or remedial action by acting de novo at a public meeting held in conformity with this act...." The Supreme Court has noted that the remedial sections of the Open Public Meetings Act "contemplate maximum flexibility in rectifying governmental action which falls short of the standards of openness prescribed for the conduct of official business." *Polillo v. Deane,* 74 *N.J.* 562, 579, 379 *A.*2d 211 (1977). While the purpose of the act is to secure public access to the meetings of public bodies, *N.J.S.A.* 10:4–15 "provide[s] a means to balance the rights of an informed citizenry against the need of government to function effectively." *Aronowitz v. Planning Bd.,* 257 *N.J.Super.* 347, 358–59, 608 *A.*2d 451 (Law Div.1992) (citing *Houman, supra,* 155 *N.J.Super.* at 162–63, 382 *A.*2d 413).

Courts have upheld corrective steps taken by a public body as sufficient to remedy defects in an earlier proceeding. *See, e.g.,*

*Aronowitz, supra,* 257 *N.J.Super.* at 360, 608 *A.*2d 451 ("[T]he corrective steps which the board took ... cured any defect in ... [its prior] proceedings."); *Board of Educ. v. Brown,* 233 *N.J.Super.* 242, 247, 558 *A.*2d 520 (App.Div.1989) (the Board's "departure from the requirements of the Open Public Meetings Act was cured by a resolution ... in which its prior resolution was 'expressly ratified, reaffirmed and restated.' "). Cases such as *Kramer v. Board of Adjust.,* 80 *N.J.Super.* 454, 194 *A.*2d 26 (Law Div.1963), which invalidated "formal re-run" votes taken in public months after a decision was reached in private, are no longer applicable as they were made under the Open Public Meetings Act's predecessor, which did not provide any remedial procedures. *See Houman, supra,* 155 *N.J.Super.* at 164, 382 *A.*2d 413.

■ The "invalidation of public action is an extreme remedy which should be reserved for violations of the basic purposes underlying the Act." *Liebeskind v. Mayor of Bayonne,* 265 *N.J.Super.* 389, 394, 627 *A.*2d 677 (App.Div.1993). While this court has determined that the notice of the closed session in February 1994 was inadequate, notice was nevertheless provided. Under these circumstances, combined with an appropriately noticed open meeting where the issue was publicly aired, invalidation of the Board's action is neither appropriate nor warranted.

There is no dispute that the December 15, 1994 meeting was held in accordance with the Open Public Meetings Act. Members of the public, including plaintiff, had an opportunity at that time to voice their opinions regarding the proposed payments to the vice-presidents. The *de novo* action taken by the Board on December 15, 1994 cured any alleged past procedural defects with regard to that issue. Plaintiff, at oral argument, conceded that the issue of settlement of the vice-president's claims is moot. As a result, plaintiff's claim for the transcript of the Board's February 17, 1994, closed session (which the Board's Secretary has sworn was neither sound recorded nor stenographically transcribed) is without merit.

Plaintiff's complaint is dismissed.