14 A.3d 75 (2011)
418 N.J. Super. 458
Francis J. McGOVERN, Jr., Esq., Plaintiff-Appellant,
v.
RUTGERS, The State University of New Jersey, Rutgers' Board of Governors and M. William Howard, Jr., In His Official Capacity as Chair of the Rutgers Board of Governors Only, Defendants-Respondents.
No. A-2531-09T1.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 2011.
Decided February 18, 2011.
*77 Francis J. McGovern, Jr., appellant, argued the cause pro se.
John J. Peirano argued the cause for respondents (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; Mr. Peirano and James P. Lidon, Morristown, of counsel and on the brief; Michelle A. Annese, on the brief).
Before Judges PAYNE, BAXTER and KOBLITZ.
The opinion of the court was delivered by
BAXTER, J.A.D.
This appeal requires us to construe portions of the Open Public Meetings Act (OPMA or Act), N.J.S.A. 10:4-6 to -21. Plaintiff, Francis J. McGovern, Jr., appeals from an October 20, 2009 Law Division order that granted summary judgment to defendants, Rutgers University and its Board of Governors (Board), thereby dismissing plaintiff's complaint with prejudice. Plaintiff also appeals from a December 18, 2009 order that denied his motion for reconsideration.
We agree with plaintiff's contention that the judge erred when he rejected plaintiff's arguments that: 1) the meeting notice the Board provided to the public concerning its September 10, 2008 special meeting contained an insufficient description of the types of matters expected to be considered in closed session; 2) one of the matters addressed behind closed doors during that meeting should have been discussed in public; and 3) the Board's practice of conducting its regular meetings with a brief open session, followed by a closed session of indeterminate duration, followed by the resumption of the open session, violates the requirements of the Act and subverts the very purposes the "Sunshine Law" was designed to achieve. In contrast, we affirm the judge's conclusion *78 that the Board is not required to set aside a portion of each meeting for public comment. Indeed, we conclude that the Board's system for permitting public comment, if certain conditions are satisfied, exceeds the requirements of the Act. We thus affirm in part, reverse in part, and remand for the establishing of an appropriate remedy.

I.
In 2008, Rutgers became the subject of a series of unflattering articles published in the The Star-Ledger describing numerous questionable practices in the University's Athletic Department (Department). The Department's elimination of six varsity sports from its roster had also prompted widespread criticism. On August 15, 2008, Board Chairman M. William Howard, Jr. notified members of the Board of his intention to convene a special meeting, to be held on September 10, 2008, "to provide the Board with an opportunity to receive a first hand report of actions being taken by the University to address the ongoing revelations about [Rutgers] Athletics in the media, and to decide if action by the Board is required."
In keeping with the Act, see N.J.S.A. 10:4-8(d)(3), the Board notified the Secretary of State of the upcoming special meeting. The notice sent to the Secretary of State, and published in three newspapers, specified that the Board would meet in closed session on September 10, 2008 at 3:30 p.m. at 7 College Avenue in New Brunswick to
act on a resolution to meet in immediate closed session to discuss matters falling within contract negotiation and attorney-client privilege, in accordance with Chapter 231, Public Law 1975, Section 7, Item b.(7).
On September 10, 2008, Chairman Howard opened the meeting at approximately 3:40 p.m. and immediately announced a resolution to go into closed session. The resolution was seconded and approved by the Board. The publicly-issued minutes of the September 10, 2008 special meeting revealed the topics that the Board discussed, although the content of the discussion itself was redacted. The topics discussed were:
CLOSED, CLOSED, CLOSED SESSION Discuss[ion] [of] the legal and fiduciary obligations of Board members.
CLOSED, CLOSED SESSION ATTORNEY-CLIENT PRIVILEGE
Discussion of Matters Involving Legal Obligations, Contracts, Terms and Conditions of Employment
Discussion of Matters Involving Stadium Construction
Discussion of Matters Involving Naming Rights of Athletic Facilities
Discussion of Matters Involving Ongoing Litigation and Investigations
Plaintiff, an alumnus of Rutgers, began attending the meetings of the Board in July 2006. He also attended the September 10, 2008 special meeting and found, in accordance with the publicly-advertised notice, that the entire meeting was closed to the public.
On January 30, 2009, he filed a four-count complaint in lieu of prerogative writs. In the first count, he alleged that the Board "fail[ed] to provide adequate notice of the actual items the Board would be considering at its September 10, 2008 meeting," and failed to "accurately state whether formal action may or may not be taken." Consequently, the notice of the September 10, 2008 meeting was "inaccurate, incomplete and misleading." Plaintiff sought a judgment voiding any action taken at the September 10, 2008 Board meeting and requiring the Board in the future *79 to provide the specific notice required by the Act.
In the second count, plaintiff alleged that the Board had improperly excluded the public from the September 10, 2008 special meeting of the Board by discussing matters in closed session that lay outside the exceptions specified in N.J.S.A. 10:4-12(b). In particular, he alleged that some of the topics discussed in closed session at the special meeting, such as the agreement between the University and Nelligan Sports Marketing (Nelligan)[1], matters involving construction of the stadium, and the naming rights for the University's athletic facilities, all should have been discussed during an open public meeting. He maintained that the closed session discussion should have been limited to advice if any, rendered by the Board's attorney regarding those contracts. As with the first count, plaintiff sought an order voiding any action taken at the September 10, 2008 special meeting.
In the third count, plaintiff alleged that the Board's failure to set aside a portion of the September 10, 2008 meeting for public comment violated the Act. He sought an order requiring the Board to set aside a portion of any future open meetings for that purpose.
In the fourth count, plaintiff alleged that the notices of the Board's regular meetings were "confus[ing]" to the public and "discourage[d] public attendance and participation" at the meetings. In particular, the fourth count alleged that notice of the Board's meetings typically included a statement that an "`open session' (typically noted to be from 8:30 a.m. to 8:35 a.m.) will be held followed by a `closed session' (typically noted to be from 8:35 a.m. to 10:00 a.m.), which will then be followed by another `open session.'" Plaintiff maintained that the Board's practice of conducting an open session, followed by a closed session, which is then followed by another open session, "left the public attendees bewildered, not knowing what was going on and with nothing to do until the next `open session' began later in the day." Plaintiff sought an order enjoining the Board from proceeding in that fashion, and requiring the Board to instead hold the entire open session first, followed by the closed session, "so that the public will understand what is going to be addressed when. . . ."
Three months after filing its answer, the Board moved to dismiss plaintiff's complaint for failure to state a claim, see R. 4:6-2(e), and plaintiff cross-moved for summary judgment. Prior to oral argument on the motions, plaintiff provided to the court and to defendants a color spreadsheet that compared the publicly-announced start time of the open meeting to the actual start time for twelve of the meetings that occurred between January 2008 and July 2009. Each of the open sessions started at the announced time specified in the public notice. For the same twelve meetings, the spreadsheet also compared the time the open session actually resumed after the conclusion of the closed session, to the publicly-advertised time that the open session was scheduled to resume. On the six occasions where the open session resumed at a time later than the original notice had specified, the discrepancies were as follows: thirty-five minutes, one hour and four minutes, twenty-five minutes, fifty-seven minutes, twenty minutes, and twenty-six minutes. Finally, the spreadsheet specified that the *80 "resumed public session began anywhere from fifty-five minutes to two hours and forty-five minutes after the meeting was called to order at 8:30 a.m."[2]
On October 20, 2009, after considering oral argument on the motions, the judge issued a written opinion and confirming order that granted defendants' motion to dismiss plaintiff's complaint with prejudice. In particular, the judge concluded that the public notice of the September 10, 2008 meeting was provided in accordance with the Act, which requires a public body to provide only "very basic" notice of the agenda items that will be under consideration. The judge also held that because the Board had taken no action on any of the agenda items that were discussed at its September 10, 2008 special meeting, even if a violation of the Act's notice requirements had been established, there was no official action for the court to void. The judge declined to presume that any future violations might occur. He did, however, observe that "the Board's broad reading (of the notice provisions of the Act) may be contrary to the purpose of the Open Public Meetings Act," and "cautioned" the Board "to be more specific as to the content and extent of its closed sessions" in the future.
As to the second count, which alleged that the Board improperly excluded the public from the September 10, 2008 special meeting by discussing in closed session matters that should have been discussed in public, the judge disagreed. He concluded that the applicable portion of the Act, N.J.S.A. 10:4-12(b), authorizes the Board to go into closed session for the very purposes described in the public notice of the September 10, 2008 meeting. Moreover, after conducting an in camera review of the unredacted September 10, 2008 minutes, the judge concluded that no violation of the Act had occurred. He therefore rejected the claim advanced in the second count.
Addressing the third count, which concerned the sequencing of an open session, closed session, and the resumption of an open session, the judge observed that "[n]othing in the Act requires that a public body complete all its public business before going into closed session." Reasoning that the "Board is given discretion relative to the organization of its meetings," the judge rejected the claim advanced in the third count.
As to the fourth count, the judge addressed the Board's policy of not routinely setting aside a portion of each open meeting for public comment. The Board's July 12, 2007 bylaws specified that although "public participation at Board meetings is not required under the Open Public Meetings Act, it is the Board's customary practice to allow such participation with respect to specific, pending agenda items." The bylaws provide that any person who requests the opportunity to speak at a Board meeting is permitted to do so, provided that such person makes the request at least twenty-four hours before the start of the meeting and provided that the speaker confines his or her comments to a topic on that day's agenda. Ordinarily, the number of such speakers is limited to five, and each speaker is permitted to speak for no more than three minutes. Plaintiff maintained that such procedures were inadequate.
The judge concluded that because the Rutgers Board of Governors is not a "Board of Education," it is not required by N.J.S.A. 10:4-12(a) to set aside any portion of its meetings for public comment.
*81 On appeal, plaintiff raises the same claims he presented to the trial court, but has added an additional claim, namely, that he should have been provided with an unredacted copy of the September 10, 2008 special meeting minutes.

II.
The OPMA, "frequently referred to as the `Sunshine Law,' requires meetings of public bodies to be open to the public at all times, except in certain designated [instances]." Burnett v. Gloucester County Bd. of Chosen Freeholders, 409 N.J.Super. 219, 232, 976 A.2d 444 (App.Div.2009) (citation omitted). As we observed in Burnett, "New Jersey has a history of commitment to public participation in government" and the OPMA "reflects this commitment." Ibid. Indeed, the OPMA opens with an emphatic declaration of the Legislature's strong commitment to the right of the public to be present at all meetings of public bodies because such presence enhances the decision-making process. The Act states:
The Legislature finds and declares that the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies, is vital to the enhancement and proper functioning of the democratic process; that secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society, and hereby declares it to be the public policy of this State to insure the right of its citizens to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way except only in those circumstances where otherwise the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion.
[N.J.S.A. 10:4-7.]
The OPMA expressly provides that absent the exceptions enumerated in N.J.S.A. 10:4-12(b), "all meetings of public bodies shall be opened to the public at all times." N.J.S.A. 10:4-12(a). The Act also requires that its provisions be liberally construed in favor of openness, N.J.S.A. 10:4-21, and "any exception from the full public disclosure mandated by the statute is to be strictly construed." Burnett, supra, 409 N.J.Super. at 233, 976 A.2d 444 (quoting Lakewood Citizens for Integrity in Gov't, Inc. v. Lakewood Twp. Comm., 306 N.J.Super. 500, 505, 703 A.2d 1020 (Law Div.1997)). So clear is the right of access to public meetings that "strict adherence to the letter of the law is required." Polillo v. Deane, 74 N.J. 562, 578, 379 A.2d 211 (1977).
With these general principles in mind, we turn to an analysis of the specific claims plaintiff raised. As to the first count, plaintiff asserts that the judge erred when he rejected plaintiff's argument that the publicly-advertised notice of the items the Board intended to discuss at the September 10, 2008 meeting failed to provide "adequate notice" of the items to be discussed at the meeting and the notice was therefore "inaccurate, incomplete and misleading."
N.J.S.A. 10:4-13 requires all public bodies seeking to move into closed session to "first adopt a resolution, at a meeting to which the public shall be admitted: a. Stating the general nature of the subject to be discussed" (emphasis added). Plaintiff maintains in the first count that the notice the Board provided of its September 10, 2008 meeting was so general as to provide *82 no notice at all. He also maintains that the notice did nothing other than quote, verbatim, the precise statutory language of N.J.S.A. 10:4-12(b)(7). As the judge observed in Council of New Jersey State College Locals v. Trenton State College Board, 284 N.J.Super. 108, 113, 663 A.2d 664 (Law Div.1994), public bodies seeking to comply with the notice requirements of N.J.S.A. 10:4-13 "must tread a fine lineinforming the public about its executive-session activities while not compromising the privacy interests of those whose business is being discussed."
In striking that balance, the public body must do more than list the exceptions that would allow it to proceed in closed session. Ibid. Of course, only the "general nature of the subject to be discussed" is required by N.J.S.A. 10:4-13(a) (emphasis added). Nonetheless, the resolution, or the public notice advertising the meeting, "should contain as much information as is consistent with full public knowledge without doing any harm to the public interest." Id. at 114, 663 A.2d 664 (quoting 34 New Jersey Practice, Local Government Law § 141, at 174 (Michael A. Pane) (2d ed. 1993)).
We agree with plaintiff's contention that the Board made no effort to provide the public with as much knowledge as possible. Merely stating, as the Board did in its notice, that it would meet in closed session "to discuss matters falling within contract negotiation and attorney-client privilege" gave the public no idea of the topics to be discussed. Unquestionably, the Board could have specified that in closed session it intended to discuss the Nelligan contract and proposals for naming rights for the stadium. As to the latter, disclosing those topics would not have compromised the contractual negotiations the Board was discussing with the corporations who were seeking naming rights. As to Nelligan, the contract had already been executed, so certainly any notice to the public that the Nelligan contract would be discussed in closed session could not have impacted contract negotiations with Nelligan. We thus agree with plaintiff's contention that the notice of the September 10, 2008 special meeting was inadequate, and ran afoul of N.J.S.A. 10:4-13, because it did nothing more than track the statutory exceptions upon which the Board relied.
This conclusion is not inconsistent with our determination in La Fronz v. Weehawken Board of Education, 164 N.J.Super. 5, 8, 395 A.2d 538 (App.Div.1978), certif. denied, 79 N.J. 491, 401 A.2d 246 (1979), that listing "personnel" on the agenda was sufficient notice. We conclude La Fronz is distinguishable, because there the privacy of particular employees was at issue. Id. at 7, 395 A.2d 538. Here, notice that the Nelligan contract would be discussed in closed session, and that naming rights to the stadium would be discussed in closed session, would not have disserved the public interest or invaded the privacy of particular individuals. Indeed, as to the latter, the Board itself implicitly acknowledged as much when it noted in the unredacted portion of the minutes that the Board had discussed in closed session "matters involving naming rights of athletic facilities." We therefore reject the trial judge's conclusion that the public notice of the September 10, 2008 special meeting satisfied the requirements of N.J.S.A. 10:4-13.
In connection with the first count, we also reject the judge's conclusion that because no Board "action" resulted from the September 10, 2008 meeting, no harm had occurred, even if there had been a violation of the requirements of N.J.S.A. 10:4-13. As the Legislature declared in N.J.S.A. 10:4-7, it is the public policy of this State to insure the right of the public "to attend *83 all meetings of public bodies at which any business affecting the public is discussed or acted upon" (emphasis added), unless, of course, one of the statutory exceptions to the public presence is applicable. The Legislature's use of the word "or" makes it clear that even if the matter is not "acted upon," the public has a right to be present during the "discuss[ion]." We therefore reject the judge's conclusion that even if the public notice of the September 10, 2008 meeting failed to specify the "general nature of the subject to be discussed," as required by N.J.S.A. 10:4-13, any such violation was of no consequence because the Board took no vote.

III.
Next, we consider plaintiff's contention that the judge erred by dismissing the second count of plaintiff's complaint, in which plaintiff alleged that the Board discussed matters in closed session that lay outside the exceptions specified in N.J.S.A. 10:4-12(b). The relevant section of the Act provides as follows:
a. Except as provided by subsection b. of this section all meetings of public bodies shall be opened to the public at all times....
b. A public body may exclude the public only from that portion of the meeting at which the public body discusses:
. . . .
(7) Any pending or anticipated litigation or contract negotiation ... in which the public body is, or may become a party.
Any matters falling within the attorney-client privilege, to the extent that confidentiality is required in order for the attorney to exercise his ethical duties as a lawyer.
[N.J.S.A. 10:4-12.]
When a trial judge or an appellate court reviews a defendant's claim that one or more exceptions to N.J.S.A. 10:4-12(b) authorizes the public body to exclude the public from a portion of the meeting, a separate analysis must be conducted concerning each item on the agenda. See Burnett, supra, 409 N.J.Super. at 227-31, 976 A.2d 444.
A portion of N.J.S.A. 10:4-12(b)(7) empowers a public body to exclude the public when necessary to protect any "material covered by the attorney-client privilege." Payton v. N.J. Tpk. Auth., 148 N.J. 524, 558, 691 A.2d 321 (1997). "If a communication is covered by the privilege, then the public body legitimately may meet with its attorney in closed session." Ibid. "The intent of the [(b)(7) exception] is to allow officials to meet privately with counselors and advisors in order to discuss policy, formulate plans of action and generally to have an exchange of ideas." Houman v. Mayor and Council of the Borough of Pompton Lakes, 155 N.J.Super. 129, 154-55, 382 A.2d 413 (Law Div. 1977) (internal quotation and citation omitted).
However, "a fine line exists between an attorney who provides legal services or advice to an organization and one who performs essentially non-legal duties. An attorney who is not performing legal services or providing legal advice in some form does not qualify as a `lawyer' for purposes of the privilege." Payton, supra, 148 N.J. at 550-51, 691 A.2d 321. If the attorney-client privilege were to be deemed applicable to any discussion between an attorney and a client, even when the lawyer is not rendering legal services, the privilege's shield would be turned into "the sword of injustice." Id. at 551, 691 A.2d 321. Indeed, in Payton, the Supreme Court observed that if the attorney-client privilege "were to apply broadly to any *84 internal investigation ... undertaken by an attorney, regardless of the pendency of litigation or the provision of legal advice, then all employers would commission attorneys as investigators." Id. at 552, 691 A.2d 321.
Plaintiff disputes the judge's conclusion that the University's contract with Nelligan could properly be discussed in closed session as it fell within the (b)(7) exception for "contract negotiation." Plaintiff asserts that the (b)(7) exception is inapplicable because the Nelligan contract had already been signed, and therefore it was not the subject of "negotiation." The Board responds to that argument by asserting that the University's Senior Vice President and General Counsel Jonathan Alger "actively participated with President McCormick in addressing the Board of Governors concerning ... the University's legal obligations under existing contracts and employment agreements." We agree with the Board.
The unredacted minutes of the September 10, 2008 special meeting support the Board's contention that legal advice was rendered on two topics concerning the existing contract with Nelligan: 1) the manner in which the Nelligan contract was procured; and 2) the status of then-pending litigation in which the The Star-Ledger was seeking access under the Open Public Records Act to documents concerning the Nelligan contract. As to each of these matters, the unredacted minutes demonstrate that Alger provided considerable legal advice, thereby satisfying the (b)(7) exception, which permits public bodies to go into closed session when necessary to protect any "material covered by the attorney-client privilege." Payton, supra, 148 N.J. at 558, 691 A.2d 321.
We turn next to the judge's conclusion that the discussions concerning the naming rights to athletic facilities were covered by the (b)(7) exception. As the unredacted minutes demonstrate, naming rights were the subject of ongoing "contract negotiation," and therefore fit squarely within the (b)(7) exception. Consequently, we reject plaintiff's argument that the judge erred when he concluded that this subject could properly be discussed in closed session.
Plaintiff also asserts that the portion of the September 10, 2008 meeting conducted in closed session involving President McCormick's overview of policy recommendations and Chairman Howard's comments involving "the need for clear rules to be implemented across all facets of the University" should not have been held in closed session. The judge's October 20, 2009 opinion did not address this subject. We agree with plaintiff's argument that this subject falls within no exception set forth in N.J.S.A. 10:4-12[3] and that it should have been conducted in public.

*85 IV.
We turn to the judge's rejection of the claim plaintiff advanced in the third count, namely, that the sequencing of a five-minute open session, followed by a closed session of indeterminate duration, followed by the resumption of an open session, violates the requirements of the Act. The Board argues, and the judge found, that nothing in the Act mandates any sequence of the open session and the closed session, thereby leaving public bodies with considerable discretion on the subject of how best to organize and run their meetings. The Board argues that the public's business "cannot be conducted with alarm clock precision." The Board also contends that the public can easily avoid waiting the hour and one-half for the closed session to be completed by merely arriving at 10:00 a.m., when the public session is scheduled to resume, rather than arriving at the meeting location at 8:30 a.m.
As plaintiff correctly argues, members of the public who are intent on being present for all aspects of the Board's meetings run of the risk of important business being conducted in those first five minutes between 8:30 and 8:35 a.m. if they choose to arrive at the meeting at 10:00 a.m., rather than at 8:30 a.m.
We now address plaintiff's principal argument in the third count, that the Board's regular practice of scheduling an open session, followed by a closed session of indeterminate duration, followed by another open session has the capacity to deter the very public participation that Act is designed to promote. See N.J.S.A. 10:4-7. The record demonstrates that not only are the members of the public forced to wait a considerable period of time while the Board goes into closed session at 8:35 a.m., but they have no guarantee that the open session will actually resume at the announced time of 10:00 a.m., rather than an hour later. Such uncertainty will inevitably cause some members of the public to leave the meeting, a result that would be avoided if the closed session did not begin until the entire public session had been completed.
The Act requires the public body to specify in advance the "time" the meeting will begin. N.J.S.A. 10:4-8(d) (defining "[a]dequate notice" as written advance notice "giving the time, date, location ... of any regular, special or rescheduled meeting"). Because the legislation is remedial in nature and its terms must be liberally construed, Barratt v. Cushman & Wakefield, 144 N.J. 120, 127, 675 A.2d 1094 (1996), any procedure that weakens the Act's provisions should be viewed as presumptively unreasonable. We therefore conclude that the variable time for the resumption of the open session, in combination with the brief five-minute open session at the beginning of the meeting, creates such uncertainty about when the public session will actually resume as to impermissibly erode the reliability of the times specified in the public notices of the Board's meetings. Therefore, the judge erred when he rejected plaintiff's claim in count three that the sequencing of the meeting violates the Act.
As Judge Carchman observed while sitting as a Law Division judge in Council of New Jersey State College Locals, supra, 284 N.J.Super. at 114-115, 663 A.2d 664, "the statute appears to contemplate [a] procedure" under which the open meeting precedes the closed meeting. We must avoid any interpretation of the Act that would subvert the right of public access to all meetings, undermine public confidence in the bodies that run the public's affairs, or that would in any way subvert the salutary purposes the "Sunshine Law" *86 is designed to achieve. N.J.S.A. 10:4-21; Polillo, supra, 74 N.J. at 578, 379 A.2d 211. We therefore reverse the trial judge's dismissal of the third count and remand for the entry of an order requiring the Board to complete its open session before commencing any closed session.[4]

V.
We now consider the judge's rejection of the claim plaintiff advanced in the fourth count. There, plaintiff argued that the Board's refusal to routinely set aside a portion of each meeting for public comment violates the provisions of the Act. The applicable statute, N.J.S.A. 10:4-12(a), specifies that the only public bodies required to "set aside a portion of every meeting ... for public comment on any... issue that a member of the public feels may be of concern" are municipal governing bodies or boards of education:
a. Except as provided by subsection b. of this section all meetings of public bodies shall be open to the public at all times. Nothing in this Act shall be construed to limit the discretion of a public body to permit, prohibit or regulate the active participation of the public at any meeting, except that a municipal governing body and a board of education shall be required to set aside a portion of every meeting of the municipal governing body or board of education, the length of the portion to be determined by the municipal governing body or board of education, for public comment on any governmental or school district issue that a member of the public feels may be of concern to the residents of the municipality or school district.

[N.J.S.A. 10:4-12(a) (emphasis added).]
The trial court held that the Rutgers Board of Governors is not a "board of education" and thus is not required under N.J.S.A. 10:4-12(a) to set aside a portion of each meeting for public comment. The judge reasoned that the term "board of education" refers only to a local school board for a public school district, not to the board of a public university, which is not associated with any particular school district or municipality.
Unquestionably, the term "board of education" refers to the governing body of local school districts, and not to the governing body of a college or university. As N.J.S.A. 18A:10-1 makes clear, the schools "of each school district shall be conducted, by and under the supervision of a board of education, which shall be a body corporate and which shall be constituted and governed, as provided by this title, for a type I, type II or regional school district as the case may be...." N.J.S.A. 18A:10-1. The reference to "type I" and "type II" and "regional school district" are, in turn references to the size of the municipality in question. A type I district is defined in N.J.S.A. 18A:9-2 as a "local school district... established in a city...." A type II district is "[e]very local school district hereafter established in a municipality other than a city...." N.J.S.A. 18A:9-3. A "regional district" is a district comprised of multiple municipalities. N.J.S.A. 18A:13-2. Thus, Title 18A's provisions define the term board of education in such a way as to make it clear that the term applies to local and regional school districts, but not to a state university such as Rutgers.
Indeed, N.J.S.A. 18A:12-1 removes any doubt on the question of whether the term *87 "board of education" refers to the governing body of Rutgers University, as it provides that:
Each member of any board of education shall be a citizen and resident of the district, or of such constituent district of a consolidated or regional district as may be required by law, and ... shall be registered to vote in the district....
[N.J.S.A. 18A:12-1.]
The phrase "registered to vote in the district" unquestionably is a reference to a locally-based board of education, not a statewide entity such as Rutgers.
We therefore affirm the trial judge's rejection of the argument advanced in the fourth count, as we conclude that the Rutgers University Board of Governors is not a "board of education" within the meaning of N.J.S.A. 10:4-12(a). That being so, the Board's July 2007 bylaws, which permit members of the public to address the Board concerning items being discussed on that day's agenda, actually exceed the requirements of the Act because the Board has no legal obligation to permit public comment.

VI.
Last, we turn to plaintiff's claim that he should have been provided an unredacted copy of the minutes of the September 10, 2008 special meeting. Plaintiff maintains that he served a document request upon the University seeking production of an unredacted copy of the minutes of the September 10, 2008 special meeting, but his request was never satisfied. As the Board correctly observes, plaintiff never raised that issue before the trial court. Absent exceptions not relevant here, we will decline to consider claims raised for the first time on appeal, especially when an opportunity existed before the trial court for the resolution of the issue in question. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234, 300 A.2d 142 (1973). We thus decline to entertain plaintiff's argument respecting access to the unredacted minutes of the meeting.

VII.
In sum, we have reversed the judge's across the board dismissal of the first count, which alleged that the public notice of the agenda items to be discussed at the September 10, 2008 closed meeting was defective. We have likewise reversed the dismissal of the third count, which alleged that the Board's regular practice of sequencing a brief open session, followed by a closed session of indeterminate length, followed by another open session, runs afoul of the Act's requirements. We have affirmed the dismissal of the fourth count, which asserted that the Board is required to set aside a portion of each meeting for public comment. As to the second count, we have affirmed the dismissal of plaintiff's claim that the Board violated N.J.S.A. 10:4-12 when it met in closed session to discuss the contract negotiations for naming rights to an athletic stadium. We have likewise affirmed the dismissal of plaintiff's claim in the second count that the Act did not authorize the Board to go into closed session to discuss the already executed Nelligan contract. We have, however, reversed the dismissal of plaintiff's claim that the Board acted improperly when it went behind closed doors to discuss the new "policies and procedures" for the Athletics Department that will be implemented "over the next several months and years." Last, we have declined to consider plaintiff's claim that he should have been provided with an unredacted copy of the September 10, 2008 meeting minutes.
We remand this matter to the Law Division for formulation of an appropriate remedy. In fashioning a remedy, the judge *88 shall consider the provisions of N.J.S.A. 10:4-15 and -16, and shall be guided by the principles articulated in Burnett, supra, 409 N.J.Super. at 240-46, 976 A.2d 444. As in Burnett, we leave to the judge's discretion the scope of the proceedings on remand, and recommend the court conduct a case management conference to determine what, if any, discovery is required.
Affirmed in part, reversed in part, and remanded in part.
NOTES
[1] The Nelligan contract was one of the subjects discussed in disparaging terms in The Star-Ledger articles.
[2] One or two of the meetings started at times other than 8:30 a.m., but our description of the elapsed intervals takes the differing start times into account.
[3] The other exceptions contained in N.J.S.A. 10:4-12 are: (1) any matter rendered confidential by federal or state statute or rule of court; (2) any matter in which public discussion would create a risk of losing federal funds; (3) any material concerning an individual's receipt of services from a publicly-funded agency if public disclosure would constitute an "unwarranted invasion of individual privacy"; (4) discussions regarding collective bargaining agreements; (5) the lease or purchase of real property with public funds or the setting of investment rates, if public discussion would impair the public interest; (6) tactics and techniques used to protect the safety and property of the public, if such disclosure could compromise those efforts; (8) personnel matters, unless the employee requests in writing that the matter be discussed in public; and (9) deliberations that may result, after a public hearing, in the imposition of a civil penalty or a license suspension.
[4] We need not decide whether there can ever be a justification, on an isolated basis, for conducting the closed portion of the meeting before the open session begins. That issue is not before us, as the record demonstrates that the Rutgers Board of Governors operates as a routine practice in the manner that we have described.