47 A.3d 724

FRANCIS J. MCGOVERN, JR., ESQ., PLAINTIFF–RESPONDENT, v. RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, RUTGERS' BOARD OF GOVERNORS AND M. WILLIAM HOWARD, JR., IN HIS OFFICIAL CAPACITY AS CHAIR OF THE RUTGERS BOARD OF GOVERNORS ONLY, DEFENDANTS–APPELLANTS.

Argued April 24, 2012—Decided July 25, 2012.

*John J. Peirano* argued the cause for appellants (*McElroy, Deutsch, Mulvaney & Carpenter*, attorneys; *Mr. Peirano, Paula M. Castaldo* and *David M. Alberts*, on the briefs).

*Francis J. McGovern, Jr.*, argued the cause pro se.

*John P. Bender*, Assistant Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Jeffrey S. Chiesa*, Attorney General, attorney; *Melissa H. Raksa*, of counsel).

*John J. Burns* argued the cause for amicus curiae New Jersey School Boards Association (*Cynthia J. Jahn*, General Counsel, attorney).

*Edward L. Barocas*, Legal Director, argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (*Mr. Barocas, Jeanne LoCicero* and *Bobby D. Connor*, on the brief).

Judge WEFING (temporarily assigned) delivered the opinion of the Court.

In this appeal we are called upon to consider the extent to which the Board of Governors of Rutgers, the State University (University), has complied with the requirements of the Open Public Meetings Act (OPMA), *N.J.S.A.* 10:4-6 to -21, and, if its compliance has been deficient, the extent to which plaintiff is entitled to a judicial remedy. Plaintiff Francis McGovern is an alumnus of the University who has attended regularly the meetings of the University's Board of Governors. Concerned at what he perceived to be a persistent disregard on the part of the Board for

OPMA's mandates, he filed an action in lieu of prerogative writs. The trial court ultimately granted defendants' motion to dismiss this complaint. Plaintiff appealed, and the Appellate Division affirmed in part and reversed in part. *McGovern v. Rutgers*, 418 *N.J.Super.* 458, 14 *A.*3d 75 (App.Div.2011). We granted certification, 207 *N.J.* 227, 23 *A.*3d 934 (2011). We also granted the motions of the Attorney General, the New Jersey School Boards Association (Association), and the American Civil Liberties Union of New Jersey (ACLU) to appear as amici curiae. We now reverse the judgment of the Appellate Division and remand for entry of an order dismissing plaintiff's complaint.

## I.

New Jersey adopted OPMA in 1975. The statute reflects New Jersey's long "history of commitment to public participation in government and to the corresponding need for an informed citizenry." *S. Jersey Pub. Co. v. N.J. Expressway*, 124 *N.J.* 478, 486–87, 591 *A.*2d 921 (1991). The Court has noted New Jersey's "strong tradition . . . favoring public involvement in almost every aspect of government." *Polillo v. Deane*, 74 *N.J.* 562, 569, 379 *A.*2d 211 (1977). The roots to this tradition run deep and extend back more than two centuries. *Id.* at 570, 379 *A.*2d 211. Greater public involvement in the affairs of government fosters two goals: fulfilling our ideal of a "government of the people" and warding off corruption. *Id.* at 570–71, 379 *A.*2d 211.

The Legislature included in OPMA a clear statement of New Jersey's public policy "to insure the right of its citizens to have adequate advance notice of and the right to attend all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way." *N.J.S.A.* 10:4–7. The only exceptions are instances "where otherwise the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion." *Ibid.* To advance that stated public policy, the Legislature directed that the statute should be "liberally con-

strued in order to accomplish its purpose and the public policy of this State." *N.J.S.A.* 10:4-21.

The enabling statute for Rutgers, *N.J.S.A.* 18A:65-1 to -93, designates Rutgers as the state university. That enabling statute provides for a Board of Governors and a Board of Trustees. The Board of Governors has overall authority to supervise the conduct of the university, its organization, administration, and development. *N.J.S.A.* 18A:65-25. The Board of Trustees acts in an advisory capacity and has control of certain assets. *N.J.S.A.* 18A:65-26. For purposes of this opinion, "Board" refers to the Board of Governors, not the Board of Trustees. The parties do not dispute that the Board of Governors of Rutgers is a public body subject to OPMA.

The bylaws adopted by the University's Board of Governors recognize the Board's statutory obligations under OPMA. They call for the Board to hold "[a]t least six regular meetings" during the year and state that these "shall" conform with OPMA. The bylaws authorize the Board to hold special meetings, which "may be called at the discretion of the Chair" or "at the request of three voting members ... stating the purpose of the meeting." The bylaws specify that the Board "shall conduct open meetings in accordance with [OPMA]" and that "[c]losed meetings shall be held only under circumstances and conditions in [OPMA]."

The statute directs that except for two limited exceptions, no public body may meet in the absence of having provided "adequate notice" to the public. *N.J.S.A.* 10:4-9. Further, the statute provides a specific definition of what constitutes "adequate notice." It is "written advance notice of at least 48 hours, giving the time, date, location and, to the extent known, the agenda ... which notice shall accurately state whether formal action may or may not be taken ...." *N.J.S.A.* 10:4-8(d). Although the statute has been amended since its original enactment to provide for notification through the Internet, *N.J.S.A.* 10:4-9.1, it also specifies that electronic notice shall not "be deemed to substitute for, or be

considered in lieu of" the statutory adequate notice, *N.J.S.A.* 10:4–9.2.

The two exceptions that permit a public body to meet without having provided such "adequate notice" are contained in *N.J.S.A.* 10:4–9(b) and *N.J.S.A.* 10:4–12(b). Under the former statute, a public body may meet without having provided notice in accordance with *N.J.S.A.* 10:4–8(d) if the public body must "deal with matters of such urgency and importance that a delay [to provide] adequate notice would be likely to result in substantial harm to the public interest," three-quarters of the members present vote to hold such a meeting, the only matters discussed and acted upon are those urgent and important matters, and notice "is provided as soon as possible following the calling of such meeting." The latter statute lists nine defined subject areas which the public body may discuss in a session that is closed to the public. These include the following: legally confidential situations; matters affecting the receipt of federal funds; an individual's private data; collective bargaining negotiations; purchase of realty or investment information and decisions that could adversely affect the outcome if made public; sensitive public safety data; pending litigation and contract negotiations; employment matters; and certain deliberations following a public hearing involving imposition of civil penalties or suspension of licenses. *N.J.S.A.* 10:4–12(b)(1) to (9). The public body may meet without having complied with the requirements of *N.J.S.A.* 10:4–8(d) provided its discussion is confined to one of those nine subject areas.

II.

Plaintiff is an alumnus of Rutgers who, starting in July 2006, began attending the regularly scheduled meetings of the Board of Governors. The Board called a special meeting to be held at 3:30 p.m. on September 10, 2008, to "act on a resolution to meet in immediate closed session to discuss matters falling within contract negotiation and attorney-client privilege." Plaintiff, in accordance with his past practice, attended the meeting. The meeting opened

at approximately 3:40 p.m., at which time the Board chairman, defendant Howard, moved immediately to close the meeting to the public. Despite an objection from plaintiff and a newspaper reporter who was present, the following resolution was presented, seconded and approved by the Board:

[b]e it resolved, that the Board meet in immediate closed session on this date, September 10, 2008, to discuss matters involving contract negotiations for sports marketing, naming rights of athletic facilities and stadium construction; employment of personnel and terms and conditions of employment; and pending litigation, investigations, and matters falling within the attorney-client privilege with respect to these subjects, in accordance with Chapter 231, Public Law 1975, Section 7, Items b.(6), b.(7) and b.(8).

The Board went into closed session at approximately 3:46 p.m. and remained in closed session until 7:55 p.m., when proceedings concluded.

Plaintiff was thereafter provided with a redacted copy of the minutes of that closed meeting. According to those redacted minutes, the Board discussed several topics, including the University's contract with Nelligan Sports Marketing, Inc., matters involving construction of the expanded football stadium, and naming rights for the University's athletic facilities. The Board also discussed in this closed session the overview of the University president's policy recommendations that the administration was considering implementing. Further, in this closed session, the Board chairman indicated his view that there was a need for clear rules to be implemented across all facets of the University.

Plaintiff filed a one-count complaint in November 2008 in which he alleged, upon information and belief, that the Board had discussed at that closed meeting matters that did not fall within the statutory exemptions of OPMA. He sought a judgment voiding any action taken by the Board at that September 10, 2008, meeting, voiding any action taken by committees of the Board that did not conform with OPMA, an injunction directing defendants to comply with OPMA, the imposition of a fine for the Board's noncompliance, and his counsel fees. There is no indication in this record that plaintiff filed this suit for any reason other than to vindicate the rights of the public under OPMA. The trial court

granted defendants' motion for a more definite statement, *Rule* 4:6–4(a), and in response, plaintiff filed a four-count complaint in lieu of prerogative writs.

In his first count, plaintiff alleged that the notice of the September 10, 2008, special meeting did not comply with OPMA because it did not state an agenda for the meeting and did not state whether any formal action might or might not be taken. In his second count, he alleged that the topics the Board discussed in the closed session of September 10, 2008, did not fit within any of the statutory exemptions under OPMA. In his third count, plaintiff alleged that the University's Board of Governors was a board of education and, as such, was required pursuant to *N.J.S.A.* 10:4–12 to set aside a portion of each meeting for public comment. In his fourth and final count, plaintiff alleged that it was the regular practice of the Board to open its regularly-scheduled meetings at the announced time, to go immediately thereafter into executive session for an unspecified period of time, and then thereafter to return to public session. Plaintiff alleged that this practice violated OPMA. Plaintiff sought a judgment voiding actions that had been taken at meetings that had not complied with OPMA and prospective injunctive relief, compelling defendants to conduct the Board's future meetings in compliance with OPMA.

After defendants filed their answer in which they contended that none of their actions violated OPMA, they filed a motion to dismiss plaintiff's complaint. Plaintiff countered with a motion for summary judgment. After entertaining oral argument, the trial court granted defendants' motion. It concluded that defendants had complied with the notice requirements of OPMA and, after reviewing redacted minutes of the September 10, 2008, meeting, concluded as well that each of the topics discussed by the Board at that closed session fit within one of the statutory exemptions afforded by *N.J.S.A.* 10:4–12(b). The trial court further ruled that the University's Board of Governors is not a board of education and thus is not required under *N.J.S.A.* 10:4–12 to set aside a portion of each meeting for public comment. Finally, it rejected

the relief plaintiff sought in the fourth count of his complaint, finding "nothing in [OPMA] that requires a public body complete all of its business before going into closed session." The trial court entered an order dismissing plaintiff's complaint and thereafter denied plaintiff's motion for reconsideration.

Plaintiff filed a timely appeal, and the Appellate Division analyzed plaintiff's arguments in turn. It agreed with plaintiff that defendants had provided inadequate notice with respect to the special meeting of September 10, 2008. *McGovern, supra,* 418 *N.J.Super.* at 463, 14 *A.*3d 75. It noted that under *N.J.S.A.* 10:4-13, a public body cannot go into closed session without first adopting, in a public session, a resolution " '[s]tating the general nature of the subject to be discussed' " in that closed session. *Id.* at 469, 14 *A.*3d 75. The panel noted the Legislature's directive that OPMA be construed liberally and held that to satisfy the requirement that a public body set forth "the general nature of the subject to be discussed" in a closed session requires that the public body provide "as much knowledge as possible" of those subjects. *Id.* at 470, 14 *A.*3d 75. It reviewed the chronology under which this matter had unfolded as well as the subjects that the Board had discussed in its closed session. *Ibid.* It concluded that in omitting any mention of the Nelligan Sports Marketing contract and the issue of naming rights for the University's facilities, the Board had not provided "as much knowledge as possible." *Id.* at 470–71, 14 *A.*3d 75.

In conjunction with plaintiff's appeal, the appellate panel was supplied with an unredacted copy of the minutes of the closed meeting of September 10. It determined that because the University's counsel was actively involved in the discussions with respect to Nelligan Sports Marketing and the question of naming rights, and because negotiations were ongoing with respect to both issues, the Board appropriately discussed those topics in closed session. *Id.* at 473, 14 *A.*3d 75. It agreed with plaintiff, however, that that portion of the Board's meeting that had been devoted to the University president's overview of policy recommendations and

the Board chairman's comments with respect to "the need for clear rules to be implemented across all facets of the University" did not fall within any of OPMA's exceptions and, consequently, should not have been discussed during a closed session. *Id.* at 474, 14 *A.*3d 75.

When the appellate panel took up the next count of plaintiff's complaint, it agreed with defendants that the University's Board of Governors is not a board of education. *Id.* at 477–78, 14 *A.*3d 75. It reached this conclusion after examining the statutory definition of a board of education contained in *N.J.S.A.* 18A:10–1. *Id.* at 477, 14 *A.*3d 75. As a result, it agreed with defendants that the Board was not required by statute to provide the opportunity for public comment at every meeting. *Id.* at 478, 14 *A.*3d 75.

Finally, the panel turned to plaintiff's remaining count, and examined the manner in which the Board conducted its meetings: a very brief public meeting, followed immediately by a closed session of indeterminate length, followed by the resumption of the public meeting. *Id.* at 474–76, 14 *A.*3d 75. This meeting format, the panel ruled, violated OPMA because it decreased public access to the Board's meetings. *Id.* at 476, 14 *A.*3d 75. It was satisfied that if it upheld that practice, it "would subvert the right of public access to all meetings [and] undermine public confidence in the bodies that run the public's affairs." *Ibid.* It remanded the matter to the trial court for entry of an order requiring the Board to complete its open session before commencing a closed session. *Ibid.*

### III.

On appeal to this Court, defendants contend that the panel erred in three respects. They assert that the notice provided for the special meeting of September 10, 2008, complied with the mandates of OPMA. They complain that the panel, with its requirement that notice of a special meeting provide "as much knowledge as possible," imposed a greater burden on a public body than had the Legislature when it enacted the statute.

Defendants also argue that the statute contains no support for the panel's directive that a public body must conclude the public portion of its meeting before going into a closed session. They stress that such a ruling has the potential to interfere significantly with a public body's ability to conduct its business efficiently and expeditiously.

Defendants also assert that the appellate panel's analysis of the references in the unredacted minutes to the remarks of the University's president and the Board's chairman during the Board's closed session was flawed. They argue that the panel's focus was too narrow and that the remarks must be viewed in light of the broader discussions that took place at that meeting.

Plaintiff counters these arguments. He maintains that the appellate panel's decision that the notice of the Board's special meeting was deficient under OPMA because it did not provide "as much knowledge as possible" was correct because the notice did not include an agenda "to the extent known." He stresses that the notice of the special meeting did not contain any agenda items but merely restated certain of the statutory exceptions to the general rule that all discussions of public questions take place in a public meeting. *See N.J.S.A.* 10:4–12(b).

Plaintiff also maintains that the Board's consistent practice of going immediately into a closed session of indeterminate length discourages public attendance and thus runs counter to the underlying philosophy of OPMA. He argues that the appellate panel's directive that the Board not go into closed session until it has concluded the items for public discussion makes it easier for members of the public to attend these meetings and thus furthers the purposes of OPMA.

Finally, plaintiff argues that the appellate panel applied correctly the directive to construe OPMA liberally when it held that the comments made in the closed session by the University's president and the Board's chairman went beyond what is permissible under *N.J.S.A.* 10:4–12(b).

Amicus Attorney General supports the arguments advanced by defendants. Amicus asserts that the panel looked to the wrong section of OPMA when it assessed the adequacy of the notice provided for the special meeting of September 10. Additionally, it stresses the practical difficulties it maintains will flow from the directive that a public body must complete the public portion of its meeting before it may go into a closed session.

Amicus Association addresses only one aspect of the appellate panel's holding, the ruling that a public body cannot structure its meetings so as to go from open session to closed session and then back to open session if, in its judgment, that would result in the most efficient and expeditious manner to conduct its business. It agrees with defendants that nothing within the language of OPMA supports such a holding. The Association recognizes that interrupting public sessions with closed sessions may inconvenience some members of the public. As a result, it proposes that public bodies be required to set forth in the notice they provide of their meetings the anticipated time at which a closed session is expected to conclude and that they further be directed to come out of closed session at that time and advise those in attendance of the remaining length of the closed session, a deadline to which they must adhere.

Amicus ACLU in its brief addresses the sufficiency of the notice defendants provided of the special meeting of September 10. It agrees with plaintiff and with the appellate panel that the notice was not adequate for purposes of OPMA. It proposes the following standard by which to measure the adequacy of a notice of a meeting of a public body: the notice "must provide sufficient information so that members of the public are apprised of what substantive issues will be discussed and whether their rights (generally or as individuals) are affected."

## IV.

Before proceeding to an analysis of the questions presented, we note the standard that governs our review. We are

called upon to interpret OPMA, and an issue of statutory interpretation is a question of law. Our review is thus de novo. *Real v. Radir Wheels, Inc.*, 198 *N.J.* 511, 524, 969 *A.*2d 1069 (2009). Consistent with the de novo standard of review, we do not owe any deference to the interpretations placed on the various provisions of OPMA by either the trial court or the Appellate Division.

Further, our analysis is guided by settled principles of statutory interpretation. Our role "is to determine and effectuate the Legislature's intent." *Bosland v. Warnock Dodge, Inc.*, 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009) (citing *D'Annunzio v. Prudential Ins. Co. of Am.*, 192 *N.J.* 110, 119, 927 *A.*2d 113 (2007); *Daidone v. Buterick Bulkheading*, 191 *N.J.* 557, 565, 924 *A.*2d 1193 (2007)).

To determine that intent, " 'we look first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen.' " *Ibid.* (quoting *Pizzullo v. N.J. Mfrs. Ins. Co.*, 196 *N.J.* 251, 264, 952 *A.*2d 1077 (2008)). In looking at that language, we give it its ordinary meaning. *Ibid.* (citing *D'Annunzio, supra,* 192 *N.J.* at 119–20, 927 *A.*2d 113). If the language is clear, our task is to apply that language to the situation that confronts us. *State v. Shelley*, 205 *N.J.* 320, 323, 15 *A.*3d 818 (2011) (citing *State v. D.A.*, 191 *N.J.* 158, 164, 923 *A.*2d 217 (2007)).

If, on the other hand, the language is ambiguous and "is susceptible to more than one possible meaning or interpretation," or if the statute is silent with respect to the issue at hand, we look to extrinsic sources, including the legislative history, to determine the intent of the Legislature. *Ibid.*

We must apply those principles, moreover, in light of OPMA's clearly stated purpose of fostering opportunities for the public to witness the conduct of public business and the legislative directive to give the statute a liberal construction. *N.J.S.A.* 10:4–21.

## A.

We turn first to the holding of the appellate panel that the notice the Board provided of the special meeting of September 10, 2008, was inadequate because it did not provide "as much knowledge as possible" of the topics to be discussed at that meeting. We are satisfied that the panel erred in reaching this determination.

The source of its error was plaintiff's failure to distinguish between *N.J.S.A.* 10:4–8, which includes as part of the statutory definition of adequate notice the requirement that the notice include the agenda of the upcoming meeting "to the extent known," and *N.J.S.A.* 10:4–13, which describes the content of the resolution a public body must pass before it may go into a closed session. Under the latter statute, the resolution must state "the general nature of the subject to be discussed" in that closed session. The two statutes deal with distinctly different procedural steps. The first, *N.J.S.A.* 10:4–8, deals with the notice requirements to be provided in advance of a meeting, and the second, *N.J.S.A.* 10:4–13, details the content of a resolution the public body must adopt once the meeting has gotten underway before going into closed session. The notice requirements of the first procedure do not govern a situation implicating *N.J.S.A.* 10:4–13.

The source for the panel's conclusion that the notice of the meeting of September 10 was inadequate because it did not provide "as much knowledge as possible" of what was to be discussed at that meeting was *State College Locals v. State College Board,* 284 *N.J.Super.* 108, 663 *A.*2d 664 (Law Div.1995). That matter was brought by several unions challenging the action of the defendant's board of trustees who, in closed session, had approved the payment of large sums of money to two vice-presidents of the college under the college's policy mandating it to provide housing for certain personnel. *Id.* at 110–11, 663 *A.*2d 664. The board published a notice of an open meeting to be held on December 2, 1993, but that notice was silent with respect to this issue. *Id.* at 111, 663 *A.*2d 664. At the meeting of December 2, 1993, the board

adopted a resolution to hold a closed meeting on February 17, 1994. *Ibid.* The resolution stated that at that closed meeting, the board would "consider personnel matters, labor relations, any pending litigation, and any other matters specifically exempted by the Open Public Meetings Act. It is anticipated that decisions made in closed session will be made public at future meetings." *Ibid.* Minutes of that closed meeting and several subsequent open meetings contained no mention of this housing issue, and in April 1994, a representative of the plaintiff inquired of the college's president, who confirmed that those payments had been made to settle claims with respect to a change in the college's housing policy. *Id.* at 111–12, 663 *A.*2d 664. The plaintiff filed suit, alleging that the board had not complied with OPMA's mandates. *Id.* at 112–13, 663 *A.*2d 664.

During the course of the action, the defendant acknowledged that its practice of holding closed sessions had been to pass a resolution advising that it would hold a closed session at a date and time "to consider personnel matters, labor relations, any pending litigation, and any other matters specifically exempted by the Open Meetings Act." *Id.* at 113, 663 *A.*2d 664. This language, the trial court held, did not comply with *N.J.S.A.* 10:4–13, which mandates that such a resolution must state "the general nature of the subject to be discussed." *Ibid.* In the judgment of the trial court, the board, by simply listing topics that were permissible to be discussed at a closed session, "made no effort to provide the public with as much knowledge as possible." *Id.* at 114, 663 *A.*2d 664.

In the matter before us, the appellate panel transferred the concept of a resolution giving the public "as much knowledge as possible" of what was to be discussed in a closed session to giving the public "as much knowledge as possible" of the subjects to be discussed in a closed meeting in the notice advising the public that such a meeting was to take place. We agree with defendants and amicus Attorney General that public bodies are often confronted with fluid, ongoing situations, and it is often difficult, if not

impossible, to determine at a later juncture whether the public body provided "as much knowledge as possible" of the intended scope of discussions at a closed session.

*N.J.S.A.* 10:4-8 requires a public body to include in its notice of an upcoming meeting the agenda of that meeting "to the extent known." We decline to impose a greater burden on public bodies than what the Legislature has required. When the Rutgers Board convened on September 10, it adopted a resolution to go into closed session "to discuss matters involving contract negotiations for sports marketing, naming rights of athletics facilities and stadium construction; employment of personnel and terms and conditions of employment; and pending litigation, investigations, and matters falling within the attorney-client privilege with respect to these subjects." This resolution was entirely adequate to meet the requirement of *N.J.S.A.* 10:4-13 that the resolution advise the public of "the general nature" of what was to be discussed at the closed session.

■ That the appellate panel applied the wrong measure by which to evaluate the adequacy of the notice of the special meeting does not, by itself, answer the inquiry whether that notice was, in fact, adequate. The official notice that was prepared and circulated stated only that on September 10 the Board would "act on a resolution to meet in immediate closed session to discuss matters falling within contract negotiation and attorney-client privilege." The record reveals clearly that by the time this notice was prepared and published, more was known about the extent of the proposed agenda than what was conveyed by the generic references to "contract negotiation and attorney-client privilege."

This notice thus did not meet the statutory definition of adequate notice contained in *N.J.S.A.* 10:4-8 for it did not include the proposed agenda for the meeting of September 10 "to the extent" it was known. The Board had an obligation to include as part of the notice of the meeting of September 10 the agenda of that meeting to the extent it was known.

■ The issue thus becomes whether any perceived deficiency in the notice that the meeting of September 10 was to take place entitles plaintiff to a remedy. We are satisfied that it does not. The statute provides for three forms of remedy for an OPMA violation: a prerogative writs action seeking to void any action taken at a meeting that did not meet OPMA's requirements, *N.J.S.A.* 10:4–15; injunctive relief to assure future compliance, *N.J.S.A.* 10:4–16; and imposition of fines, *N.J.S.A.* 10:4–17.

The Board took *no action* at the meeting of September 10, however, and thus *N.J.S.A.* 10:4–15 is inapplicable. We are also satisfied that as the record stands, injunctive relief under *N.J.S.A.* 10:4–16 is inappropriate. The Appellate Division has noted that injunctive relief under *N.J.S.A.* 10:4–16 may be appropriate if "a *pattern of non-compliance* has been demonstrated." *Burnett v. Gloucester Cnty. Bd. of Chosen Freeholders,* 409 *N.J.Super.* 219, 246, 976 *A.*2d 444 (App.Div.2009). Here, the record fails to disclose a repeated pattern of OPMA violations. Finally, *N.J.S.A.* 10:4–17 is inapplicable because it requires that a violation of OPMA be "knowing" before a fine may be imposed. The record before us does not support a finding of a "knowing" violation.

### B.

We turn to the second issue before us, whether, in its closed session of September 10 the Board's discussion strayed from those topics permissible under *N.J.S.A.* 10:4–12(b). In connection with this argument, we have reviewed, as did the appellate panel, the unredacted minutes of that closed session. The minutes refer to a "closed, closed, closed session" attended only by members of the Board, Secretary to the University, and general counsel to the University. The minutes are silent as to what may have been discussed in that executive session.

■ The minutes then refer to a "closed, closed session" attended by members of the Board, members of the administration, including the University's president, and chairman of the Board of Trustees. This section is headed "Attorney–Client Privi-

lege" and discusses a variety of topics, including the University's relationship with Nelligan Sports Marketing, construction of the expanded football stadium, and naming rights for athletics facilities. According to the minutes, the only speaker on these topics was the University's president; there is no indication that at any point during this portion of the meeting that the University's general counsel provided any advice or opinions to the Board. Nor do the minutes indicate that the president was reporting on advice or opinions the University's counsel had provided. We recognize, however, that certain of these discussions could fall within *N.J.S.A.* 10:4–12(b)(7), under which a public body can discuss in a closed session "pending or anticipated ... contract negotiation."

■■ The next portion of the minutes of this meeting refers to "Discussion of matters involving ongoing litigation and investigations." The matters discussed in this section of the minutes clearly fall within the scope of *N.J.S.A.* 10:4–12(b)(7).

■■ The two concluding references in the minutes are to the remarks of the University's president and Board chairman with respect to anticipated policy recommendations and formulation of clear rules or guidelines. We agree with the appellate panel that nothing within OPMA would authorize the exclusion of the public from discussion of such potentially significant policy issues. We reject the argument of defendant that so long as topics discussed in this closed session "indirectly relate" to subjects that are properly the subject of a closed meeting, there is no violation of OPMA. Such a construction could eviscerate the statute and runs counter to our mandate to construe the statute in such a manner as to maximize public participation. *See N.J.S.A.* 10:4–21.

We recognize that, as a meeting progresses, there may be a natural progression from the discussion of topics from which the public may be excluded to topics from which the public may not be excluded. Members of public bodies must be vigilant during closed sessions to ensure that they do not stray from the defined, circumscribed issues that may be addressed in a closed session.

■ As with the previous issue, however, for the reasons we stated, we are satisfied that the statute affords plaintiff no remedy. The Board took no action that could be voided, *N.J.S.A.* 10:4–15, there was no showing of a pattern of noncompliance justifying injunctive relief, *N.J.S.A.* 10:4–16, and there was no evidence that any violation was knowing, justifying a fine, *N.J.S.A.* 10:4–18.

C.

■ The third question that confronts us is the ruling of the appellate panel that upheld plaintiff's challenge to the Board's practice of conducting its meetings in a sequential fashion: an open meeting followed immediately by a closed meeting followed by a later-resumed open meeting. In reaching its conclusion, the panel noted the need to "avoid any interpretation of the Act that would subvert the right of public access to all meetings, undermine public confidence in the bodies that run the public's affairs, or that would in any way subvert the salutary purposes" of OPMA. *McGovern, supra,* 418 *N.J.Super.* at 476, 14 *A.*3d 75. While the panel summarized correctly the philosophy and goals of OPMA, the remedy it imposed, "requiring the Board to complete its open session before commencing any closed session," lacks textual support in the statute and is too sweeping in scope. There was, by way of example, not even a contention, let alone a finding, that the Board structured purposely its meetings in this fashion with the goal of restricting the opportunity of the public to observe its meetings. It does not follow that because plaintiff may experience some inconvenience as a result of this sequence that the Board acted with the purpose to cause that inconvenience and to discourage him from attendance.

We note that the Board has included as part of its schedule of regularly-scheduled meetings both the time at which the meeting will start, with the notation that the meeting will start with a closed session, and the time at which the open session will commence. That information assists members of the public who wish to attend meetings of the Board to decide how to structure

their own schedules. Other public bodies subject to OPMA might wish to include such information as part of their own schedules in light of the benefits to members of the public.

We agree with defendants and amici Attorney General and Association that a public body must be afforded discretion in determining the most advantageous and efficacious manner of proceeding through its agenda items. Absent proof of bad motive, courts should be loathe to intervene in such highly individualized decisions and to impose rigid mandates that could prove unworkable. Here, the appellate panel remanded the matter to the trial court for entry of an order mandating that the Board of Governors complete the open portion of its meetings before proceeding into closed session. Because we are satisfied such relief is unwarranted, such an order would be inappropriate.

## V.

We thus reverse the judgment of the Appellate Division and remand this matter to the trial court for entry of an order dismissing plaintiff's complaint.

*For reverse and remand*—Chief Justice RABNER, and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON, and Judge WEFING (temporarily assigned)—5.

*Opposed*—None.

*Not Participating*—Justice PATTERSON—1.