**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1151-18T2

JOEL SCHWARTZ and
CORRINE O'HARA,

     Plaintiffs-Appellants,

v.

PRINCETON BOARD OF
EDUCATION,

     Defendant-Respondent.

—————————————————

Argued October 15, 2020 – Decided October 30, 2020

Before Judges Whipple, Rose, and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1582-18.

Stephen J. Edelstein argued the cause for appellants (Weiner Law Group, LLP, attorneys; Stephen J. Edelstein, of counsel and on the briefs).

Vittorio S. LaPira argued the cause for respondent (Fogarty & Hara, attorneys; Vittorio S. LaPira, of counsel and on the brief; Robert D. Lorfink, on the brief).

Katrina M. Homel argued the cause for amicus curiae New Jersey School Boards Association (New Jersey School Boards Association, attorneys; Katrina M. Homel, on the brief).

PER CURIAM

By order to show cause and complaint in lieu of prerogative writs, plaintiffs Joel Schwartz and Corrine O'Hara sought judgment: (1) declaring defendant Princeton Board of Education (defendant or Board) violated the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21, by improperly permitting Board "members to cast secret votes electronically during a public meeting"; and (2) voiding the Board's vote on one agenda item. Assignment Judge Mary C. Jacobson denied relief in a comprehensive oral decision accompanying the September 28, 2018 order, thereby dismissing the complaint with prejudice.

Plaintiffs now appeal from that order; amici curiae New Jersey School Boards Association (NJSBA)[1] and New Jersey League of Municipalities join the Board in urging to affirm. Because the appeal presents solely legal issues concerning interpretation of the OPMA, we have conducted a de novo review of

_____

[1] In their reply brief, plaintiffs claimed the NJSBA "has a financial interest in the success of BoardDocs," which as explained below, is the electronic voting system at issue. Plaintiffs attempted to amplify their assertion prior to oral argument before us, but we did not consider their improper written submission; neither the parties nor the NJSBA commented on the alleged interest during argument.

the record.  Kean Fed'n of Teachers v. Morell, 233 N.J. 566, 583 (2018).  Having concluded Judge Jacobson correctly determined the Board's action did not violate the OPMA, we affirm.

I.

This appeal has its genesis in a longstanding – and controversial – "sending and receiving" relationship between defendant and the Cranbury Township Board of Education, the latter of which pays tuition for its students in grades nine through twelve to attend Princeton High School.  Seeking to renew the relationship for another ten-year term, defendant included the "Sending/Receiving Relationship Agreement 2020-2030" as Item P.23 on the agenda for its June 12, 2018 meeting.  It is undisputed that proper notice of Item P.23 was provided to the public.

Plaintiffs and about thirty members of the public personally attended the meeting, which also was "live streamed" on YouTube for additional public access.  After voting on other agenda items, the Board members reached Item P.23 and discussed the proposed sending and receiving agreement for more than forty-five minutes.  By a vote of seven to one, with two members abstaining, the Board adopted the resolution approving the agreement.  At issue is the manner in which the vote was rendered.

According to Board Secretary Stephanie Kennedy's certification in opposition to plaintiffs' order to show cause, BoardDocs is "a cloud-based service that allows the Board to generate its agendas, resolutions, and minutes through an easy-to-use electronic system." The BoardDocs system permits the operator to "take and adjust the roll during the meeting, record votes, take notes to be included in the minutes, and display the meeting agenda, motions, and vote results for the audience." The system also permits Board members to vote on agenda items from their laptop computers. After the vote is closed, the BoardDocs operator saves the votes, which are then projected onto a display screen for public viewing. As she had done for other Board meetings, Kennedy operated BoardDocs during the June 12 meeting and followed those procedures.

Regarding Item P.23, Kennedy stated: "After the results of the votes were displayed on the screen, I saw members of the public approach the screen[,]" but "[n]o member of the public said that they [sic] were unable to see the results on the screen or asked that the results be read aloud." Pursuant to the OPMA, see N.J.S.A. 10:4-14,[2] Kennedy recorded each Board member's vote in the minutes

---

[2] Section 4-14 of the OPMA provides, in pertinent part:

> Each public body shall keep reasonably comprehensible minutes of all its meetings showing the time and place, the members present, the subjects

of the meeting. Each Board member reviewed the draft minutes; none advised Kennedy that she had "inaccurately recorded his or her vote from the June 12, 2018 meeting."

Nonetheless, plaintiffs and eleven[3] other attendees certified they were unable to see or hear the votes for Item P.23. It is undisputed that the Board did not dim the room's lights during the vote. Some attendees claimed the screen was "completely washed out" by the room's lighting and, as such "nearly impossible to read." It is likewise undisputed that "[a]s the Board's vote took place, no one announced to the public how each Board member was voting."

On the return date of the order to show cause, plaintiffs' counsel played the YouTube video of the June 12 meeting[4] and a video from a Board meeting conducted in April 2018, to demonstrate the contrast between the room's lighting during those meetings. Apparently, the lights had been dimmed when text was displayed on the screen during the April meeting. Conversely, the video of the

---

considered, the actions taken, the vote of each member, and any other information required to be shown in the minutes by law, which shall be promptly available to the public . . . .

[3] Of the certifications provided on appeal, only eight attendees indicated they could not view the votes on the screen.

[4] The Board provided a copy of the recording, which we have reviewed.

June 12 meeting confirmed the lights were not dimmed when the votes were cast on the display screen. When rendering her decision, Judge Jacobson acknowledged it was "difficult to read" the on-screen display for the June 12 meeting. The judge also accepted the sworn statements of plaintiffs and other members of the public who said they could not see the votes.

Nonetheless, the judge noted no audience member advised the Board he or she could not see the words on the screen in real time. The judge found "even after the vote here, there was no objection. Certainly not immediately following the vote, or as far as I've been informed, the meeting went on with an additional opportunity for public comment. It was never brought to anyone's attention." The judge also noted the absence of any complaints about the Board's use of BoardDocs during prior meetings. The judge therefore rejected plaintiffs' argument that it was "not up to them . . . to bring a problem like this to the attention of the Board."[5]

---

[5] In opposition to plaintiffs' application, defendant provided copies of "live tweets" from a local newspaper's Twitter feed. Four of those tweets, which are minutes apart, state the vote of each Board member. The judge briefly commented "someone certainly was able to follow what happened . . . in real time." But the judge recognized the tweets were not certified by the reporter who published them, acknowledging "the unfortunate situation" that "some members of the public were not able to see . . . each vote of each member" when the votes were cast.

A-1151-18T2

Mindful that case law interpreting the OPMA includes "broad statements about enhancing public participation," the judge said it would have been "better for the public to know how each member voted at the time" the votes were cast, but she added "that was the [Board's] intent." The judge found each Board member's vote was recorded electronically by BoardDocs and the meeting itself was live streamed, allowing those not physically present to view the meeting. Although there were "some technical problems, or visibility problems," the judge determined the OPMA was not violated "[b]ecause the essence of the public process was there." In the alternative, the judge found those technicalities would not invalidate the Board's action.

The judge also correctly observed the OPMA permits "certain flexibility" in the manner in which it conducts its business. In that regard, the judge rejected plaintiffs' argument that the OPMA requires sequential voting. She also found no evidence in the record to support plaintiffs' contention that the voting constituted "a secret process." Comparing the videos of the April and June 2018 meetings, the judge was unpersuaded "that the Board intentionally did not dim the lights to deprive the audience [in the present matter] of seeing how the members voted." Rather, the minutes of the June 12 meeting and media accounts "made clear subsequently how each member voted." Indeed, the minutes of the

meeting "included each Board member's vote by name." Accordingly, members of the public could use that voting information for "their own public participation or advocacy going forward in the future."

In sum, the judge found the Board properly noticed the public of the June 12 meeting, and "ensure[d] that this meeting was open to the public, that the debate took place in . . . public, [and] that every citizen there could follow every statement that was made by every member of the Board both in favor and against the resolution." Here, the Board went "the extra mile to make sure that the meetings [we]re broadcast live." Accordingly, the judge concluded there was no violation of the OPMA because "the intent of the Board was to allow the public to see how each individual member voted."

On appeal, plaintiffs reprise their argument that defendant violated the OPMA by improperly permitting Board members to cast "secret ballots" on Item P.23 and, as such, the vote must be set aside. Maintaining they could not see or hear the votes, plaintiffs claim they did not fully witness the Board's decision-making process as required by the OPMA and, as such, the judge's decision violates the act's findings. We have carefully considered plaintiffs' contentions in view of the applicable law, and conclude they lack sufficient merit to warrant extended discussion in our written opinion. R. 2:11-3(e)(1)(E). We affirm

substantially for the reasons expressed by Judge Jacobson in her well-reasoned decision. We add the following remarks.

## II.

The procedures required by the OPMA are intended to advance the Legislature's declared purpose to ensure "the right of the public to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies . . . ." N.J.S.A. 10:4-7. That is because "secrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society . . . ." Ibid.; see also In re Consider Distrib. of Casino Simulcasting Special Fund, 398 N.J. Super. 7, 16 (App. Div. 2008). "To advance that stated public policy, the Legislature directed that the statute should be 'liberally construed in order to accomplish its purpose and the public policy of this State.'" McGovern v. Rutgers, 211 N.J. 94, 99-100 (2012) (quoting N.J.S.A. 10:4-21). However, if the court finds "the action was taken at a meeting which does not conform to the provisions of this act, the court shall declare such action void." N.J.S.A. 10:4-15.

Ordinarily, the public body must provide "adequate notice" of all public meetings. N.J.S.A. 10:4-9. Under the OPMA, adequate notice is defined as

"written advance notice of at least 48 hours, giving the time, date, location and, to the extent known, the agenda of any regular, special or rescheduled meeting, which notice shall accurately state whether formal action may or may not be taken . . . ."  N.J.S.A. 10:4-8(d).  Where, as here, the public meeting is held by a board of education, a portion of the meeting must be set aside "for public comment on any governmental or school district issue that a member of the public feels may be of concern to the residents of the municipality or school district."  N.J.S.A. 10:4-12.

The OPMA further requires that the public body "keep reasonably comprehensible minutes of all its meetings showing the time and place, the members present, the subjects considered, the actions taken, the vote of each member, and any other information required to be shown in the minutes by law."  N.J.S.A. 10:4-14.  The meeting minutes "shall be promptly available to the public to the extent that making such matters public shall not be inconsistent with section 7 of this act."  Ibid.

Following our review of the record, we conclude the Board's actions conformed to the provisions of the OPMA.  The Board properly noticed the public of the meeting, including Item P.23, and discussed the proposed agreement for forty-five minutes in the presence of public who physically

attended the meeting and those who live streamed the meeting on YouTube. Upon the conclusion of the discussion, the Board members electronically voted using their laptops, and their votes were stored in BoardDocs. Although the votes were difficult to view as they were displayed, and were not cast aloud, no audience members asked to see or hear the votes or otherwise indicated they could not observe the votes. Moreover, each Board member's vote was set forth in the minutes of the meetings.

Put simply, plaintiffs provide no authority to support their argument that the vote for Item P.23 should have been cast aloud or through a roll call vote "so that each member may vote, seriatim, and the public may see and hear what transpires." On the contrary – as plaintiffs acknowledge – the Legislature specified multiple instances in the education statute which expressly require a roll-call vote. See, e.g., N.J.S.A. 18A:17-5 (appointment of a board secretary); N.J.S.A. 18A:17-24.3 (appointment of a shared superintendent); N.J.S.A.18A:25-6 (suspension of assistant superintendents); N.J.S.A. 18A:33-1 (adoption of courses of study). No such requirement exists for a sending and receiving agreement and we decline to impose one here. Plaintiffs' policy argument is best left to the other two branches of government. See In re

Declaratory Judgment Actions, 446 N.J. Super. 259, 286 (App. Div. 2016); State

v. Saavedra, 433 N.J. Super. 501, 525 (App. Div. 2013).

Affirm.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1151-18T2